**UNITED STATES of America,
Plaintiff,
v.
WHAS, INC., Defendant.
Civ. A. No. 5075.**

United States District Court
W. D. Kentucky,
Louisville Division.
April 27, 1966.

---

Ernest W. Rivers, U. S. Atty., Western Dist. of Ky., Louisville, Ky., John W. Douglas, Asst. Atty. Gen. of United States, Harland F. Leathers and William E. Nelson, Attys., Dept. of Justice, Washington, D. C., for plaintiff, Henry Geller, Gen. Counsel, and Hilburt Slosberg, Assoc. Gen. Counsel, and Barbara B. O'Malley, Atty., Federal Communications Commission, Washington, D. C., of counsel.

Wilson W. Wyatt and Edgar A. Zingman, Wyatt, Grafton & Sloss, Louisvile, Ky., for defendant, Neville Miller and John P. Bankson, Jr., Miller & Schroeder, Washington, D. C., of counsel.

JAMES F. GORDON, District Judge.

The above entitled action came on for decision before the undersigned on April 8, 1966, upon the Defendant's Motion for Summary Judgment; there appeared Ernest W. Rivers, United States Attorney, and John B. Summers, Attorney, Federal Communications Commission, for the Plaintiff, and Wilson W. Wyatt and Edgar A. Zingman for the Defendant. The Court having heard the argument of counsel, considered the affidavits and depositions filed, examined the exhibits, and studied the memoranda submitted by counsel, and upon all the files, records and proceedings herein, finds as facts, states as conclusions and directs the entry of judgment as follows:

### Findings of Fact

1. Plaintiff, United States of America, brings this action pursuant to 47 U.S. C. Section 151 et seq., as amended, (Section 504(a) of the Communications Act of 1934) for the recovery of a $1,000 forfeiture as provided in 47 U.S.C. Section 503(b), alleging willful violation, on April 29, 1963, of pertinent FCC regulations, by the Defendant, WHAS, Inc., resulting from the broadcasting by it of a political telecast program titled "The Chandler Years In Review", all emanating from what was a usual and typical, heated and bitter * Kentucky Democratic primary campaign for Governor. A campaign between Edward T. Breathitt and Albert Benjamin Chandler, in which the former was subsequently successful. The program in question was clearly designed to support the candidacy of Edward T. Breathitt and to discredit the candidacy of A. B. Chandler.

The Defendant, WHAS, Inc., did not, before or after the broadcast, announce that the same was telecast in the interest of Breathitt's candidacy though a sponsor, the Committee for Good Government, was identified.

2. Defendant is the operator and licensee of a broadcasting station within the meaning of said Act, transmitting television to the public.

3. On or about April 25, 1963, the Zimmer-McClaskey-Lewis, Inc. advertising agency entered into a contract with the Defendant for the telecast of a thirty

---

* See the poem "In Kentucky" by James H. Mulligan.

minute video tape political program on the evening of April 29, 1963, and for certain incidental technical services in connection with this telecast.

4. The "Application For Political Broadcasts" executed by the Zimmer-McClaskey-Lewis, Inc. advertising agency on April 25, 1963, stated that "the funds to be used in payment for the above described broadcast time have been furnished by the Committee for Good Government and you are directed to so describe the sponsor in your log, or otherwise, and to announce the program as paid for by such person(s) or organization."

5. The aforesaid application listed "John Ward, Pikeville, Kentucky (GE 7-6705)" as chairman, and "Jack Roby, Franklin, Kentucky (586-5373)" as co-chairman of the Committee for Good Government and was executed by the Committee for Good Government by one Mary L. Moore, an employee of Zimmer-McClaskey-Lewis, Inc.

6. The "Facilities Contract-Political" executed by Zimmer-McClaskey-Lewis, Inc. on April 25, 1963, stated that the program was "sponsored by" the "Committee for Good Government".

7. The "Advertising Order" executed by Zimmer-McClaskey-Lewis, Inc. on April 25, 1963, stated that the Committee for Good Government was the advertiser.

8. At no time prior to the telecast on April 29, 1963, or prior to the depositions in this action in February and March, 1966, was it conveyed to any officer, agent or employee of the Defendant that the Committee for Good Government was not in fact the sponsor of and payor for the telecast of April 29, 1963.

9. On April 23, 1963, for a fee of $969.00, paid to Defendant by Zimmer-McClaskey-Lewis, Inc., the Defendant's employees made a video tape of the program to be run on April 29, 1963, and also performed other technical services in connection with the film.

10. At the time the program was telecast on April 29, 1963, the Defendant made the following announcements which were true so far as Defendant knew:

(a) At the beginning of the program a slide was put on the screen stating:

"A Paid Political Telecast"

At the same time an announcer read:

"The following is a paid political telecast sponsored by the Committee for Good Government. Though video-taped in the studios of WHAS Television, the program in all its details was under the complete production control of the sponsor."

(b) At the close of the program again the slide came up, "A Political Telecast" and then the language spoken by the announcer was:

"Though video-taped in the studios of WHAS–TV, the preceding program in all of its details was under the complete production control of the Committee for Good Government and was a paid political telecast sponsored by the Committee for Good Government."

11. Defendant and its agents and employees having any responsibility for or connection with the telecast of April 29, 1963, at the time of that telecast assumed that the Committee for Good Government was in fact the sponsor and payor for the telecast of April 29, 1963.

12. At the time of the telecast of April 29, 1963, Defendant and its agents and employees having any responsibility for or connection with that telecast, had no reasonable basis for doubting, challenging or otherwise investigating the sponsorship and financing information furnished by Zimmer-McClaskey-Lewis, Inc.

13. Zimmer-McClaskey-Lewis, Inc. is a well established and responsible advertising agency which had customarily prepared programs for clients and furnished the Defendant accurate data concerning the financing and sponsorship of such programs.

14. It is a custom and practice, countenanced by Federal and State authorities dealing with political campaigns, for campaign advertising to be sponsored and paid for by numerous committees.

15. The Committee for Good Government was a bona fide subsisting political committee for some years prior to and at the time of the April 29, 1963 telecast.

16. At the time of the April 29, 1963 telecast, John Ward, Pikeville, Kentucky, was the chairman of the committee for Good Government and Jack Roby, Franklin, Kentucky, was its co-chairman.

17. Prior to the onset of these proceedings, there was no public record or proceeding in which the Federal Communications Commission advised or determined that its political telecast sponsorship identification rules required disclosure of not only the name of the sponsor of the program, but also the name of the candidate which the broadcast is intended or seeks to support.

18. There is no genuine issue as to any material fact herein.

*Conclusions of Law*

█ 1. Defendant did not willfully violate the provisions of the Communications Act of 1934, 47 U.S.C. Section 151 et seq. or any rule or regulation of the Federal Communications Commission thereunder.

2. The Regulations of the Federal Communications Commission, Section 3.654 (47 C.F.R. Section 73.654) do not by their terms require disclosure of the name of the candidate (which the broadcast is intended or seeks to support) in addition to the name of the sponsor of the program.

█ 3. A licensee dealing with an established and responsible advertising agency is not required to independently investigate the actual role of a political committee whose name is furnished by the agency to the licensee as the "sponsor" of a political telecast. The use of such committees, desirable or undesirable as it may be, has long been countenanced by those in the Federal and State Governments having authority therefor and I find no basis for substituting the Com-

mission as a self-annointed arbiter of political morality through a novel interpretation of Commission Rules and Regulations.

█ 4. There is no special exception for administrative agencies from the Constitutional requirements. While it may be a salutary rule to require disclosure of the name of a candidate in whose behalf or support a broadcast is made, that was not the clear mandate of the Act or Regulations on April 29, 1963.[1] To announce thereafter, for the first time, that the Act and Regulations require such candidate identification, (in addition to sponsor identification) and in the same opinion to deem willful a prior contrary performance, constitutes ex post facto condemnation denied to the Government by our Constitution and our legal heritage.

5. There being no genuine issue as to any material fact, it is obvious from the foregoing that the Defendant is entitled to judgment as a matter of law.

ORDER FOR JUDGMENT

Let Judgment be entered for the Defendant in accordance herewith.

1. The Court does not hereby disapprove the right of the Federal Communications Commission to require both sponsor and candidate identification by licensees for political programs broadcast after the Memorandum Opinion and Order of July 1, 1964.